IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-766-FL

| | |
|---|---|
| NC CONTRACTING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| MUNLAKE CONTRACTORS, INC., ) | |
| INDEPENDENCE PLACE WEST ) | |
| FAYETTEVILLE, LLC and BERKLEY ) | |
| REGIONAL INSURANCE COMPANY, ) | |
| ) | |
| Defendants. | |

This matter is before the court on defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). (DE # 14). Plaintiff filed a response in opposition to the motion, and defendants replied. For reasons set forth below, after consideration of defendants' motion to dismiss under Rule 12(b)(3), the court finds that this case should be dismissed. The court does not reach the question of dismissal under Rule 12(b)(6).

**STATEMENT OF THE CASE**

Plaintiff, a North Carolina corporation, filed complaint on December 2, 2011, in Wake County Superior Court, against defendants Munlake Contractors, Inc., a Missouri corporation ("Munlake"), Independence Place West Fayetteville, LLC, a Georgia limited liability company ("Independence Place"), and Berkley Regional Insurance Company ("Berkley"), a Delaware corporation with principal place of business in Iowa. Plaintiff asserts claims for breach of contract and *quantum meruit* against defendant Munlake, for enforcement of lien on funds

1

against defendants Munlake and Independence Place, for enforcement of lien on real property against defendant Independence Place, and for recovery on a payment bond against defendants Munlake and Berkley.

Defendants removed the action to this court on December 30, 2011, under 28 U.S.C. §§ 1332, 1441, and 1446. On January 27, 2012, defendants filed the instant motion to dismiss, pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. Issues raised are ripe for ruling.

## STATEMENT OF FACTS

Plaintiff alleges the following facts. Defendant Independence Place is the owner of certain real property located in Fayetteville, North Carolina. Defendant Munlake, as general contractor, entered into a contract with defendant Independence Place to perform general construction of The Independence Place Apartments (the "Apartments") on the property. In turn, defendant Munlake entered into a subcontract with plaintiff, under which plaintiff was to provide siding, trim labor, materials, equipment, and related labor to defendant Munlake for its work on the Apartments. Subsequently, defendant Munlake and plaintiff modified the subcontract to provide, *inter alia*, for an increase in labor by plaintiff, an increase in the amounts due plaintiff, and requirement that plaintiff be paid every two weeks.

The subcontract includes the following provisions:

XIV. DISMISSAL AND TERMINATION
. . .
    E.    This Subcontract was executed and submitted in the State of Missouri, and all bids are considered and accepted in Missouri.
    F.    Any disputes arising under this Subcontract shall, at the Contractor's discretion, be submitted for mediation or arbitration under AAA rules in Kansas City, Missouri.
    G.    Venue for legal action shall be proper only in the courts of Jackson County, Missouri.

2

Defs.' Mem. Ex. 3 ("Subcontract General Conditions") at 8.

After the subcontract was modified, plaintiff alleges that it brought in additional subcontractors and altered the agreement with its existing subcontractor to enable increase in crew size. However, Munlake failed to pay plaintiff every two weeks and failed to pay fair additional compensation for plaintiff's increased costs. Plaintiff complained to defendant Munlake, which terminated the subcontract on June 13, 2011.

Until the date of termination, plaintiff alleges that it properly performed its work under the subcontract. Despite invoicing and demands for payment, plaintiff remains unpaid for its work under the subcontract and for its improvements of the Apartments, which work plaintiff values at no less than $214,622.00.

On or about August 17, 2011, plaintiff served a Notice of Claim of Lien Upon Funds owed to Independence Place, as owner of the property, and Munlake, as contractor. On September 16, 2011, plaintiff filed a Claim of Lien on the property with the Cumberland County Clerk of Court ("Lien on Real Property").

## DISCUSSION

Defendants move to dismiss this action, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, due to improper venue. Defendants contend that the forum-selection clause in the subcontract between Munlake and plaintiff requires that all disputes arising under the subcontract be pursued in Jackson County, Missouri, and that the action in this court must therefore be dismissed.

A.  Standard of Review

"[A] motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." Aggarao v. MOL

3

Ship Mgmt. Co., Ltd., 675 F.3d 355, 365 n.9 (4th Cir. 2012); see also Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006). When considering a Rule 12(b)(3) motion to dismiss, the court views the facts in the light most favorable to plaintiff and may consider evidence outside the pleadings. Aggarao, 675 F.3d at 366.

B.   Analysis

"[A] federal court interpreting a forum selection clause must apply federal law in doing so." Albermarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650 (4th Cir. 2010). "As an agreement purporting to modify or waive the venue of a federal court, a forum selection clause implicates what is recognized as a procedural matter governed by federal law–the proper venue of the court." Id. See also Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988). "When construing forum selection clauses, federal courts have found dispositive the particular language of the clause and whether it authorizes another forum as an *alternative* to the forum of the litigation or whether it makes the designated forum *exclusive*." Albermarle Corp., 628 F.3d at 650-51. "[A]n agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." IntraComm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007) (quoting John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc., 22 F.3d 51, 53 (2d Cir .1994)). The court's analysis also necessarily addresses questions concerning whether the forum-selection clause is enforceable, and if the clause is enforceable, the scope of the clause.

    1.   The forum selection clause is mandatory

The forum selection clause at issue here states: "Venue for legal action shall be proper *only* in the courts of Jackson County, Missouri." Defs.' Mem. Ex. 3 § XIV, G (emphasis added). This clause, if enforceable, mandates exclusive venue in the state courts of Jackson

4

County, Missouri. See IntraComm, Inc., 492 F.3d at 289-90 (forum selection clause stating parties "shall be free to pursue its rights at law or equity in a court of competent jurisdiction in Fairfax County, Virginia" was non-exclusive because of the phrase "shall be free" but the courts referenced by the clause were state courts in Fairfax County). See also Genesis Services Group, Inc. v. Culi-Services, Inc., 4:98-CV-145-BO(3), 1999 WL 1939986 (E.D.N.C. Mar. 30, 1999) ("[W]here the language of a forum-selection clause refers to a specific county and not to a specific judicial district, venue is intended to lie only in state court.") (internal citations omitted).

2. The forum selection clause is enforceable

The court must next determine whether the forum selection clause is enforceable. Contractual forum-selection provisions are presumptively valid, but this presumption may be overcome by a clear showing that the provision is unreasonable under the circumstances. Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citing Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1974)). A forum-selection provision may be found unreasonable if:

> (1) [its] formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

Allen, 94 F.3d at 928. The first factor above is not at issue, where plaintiff does not allege fraud in the formation of the subcontract. Pl.'s Resp. 8. Plaintiff argues however that the other three Allen factors counsels against enforcement of the forum selection clause. The court considers each factor in turn.

a. Inconvenience or unfairness of the selected forum

Plaintiff argues that the second Allen factor counsels against enforcement of the forum-selection clause. This factor requires plaintiff show "that the specified forum is so 'seriously

5
Case 5:11-cv-00766-FL    Document 27    Filed 10/25/12    Page 5 of 14

inconvenient,' that he would be deprived of an opportunity to participate in the adjudication." Mercury Coal & Coke v. Mannesmann Pipe and Steel Corp., 696 F.2d 315, 319 (4th Cir. 1982).

Plaintiff argues that litigation in Jackson County, Missouri is so gravely inconvenient as to deprive plaintiff of its day in court. Allen, 94 F.3d at 928. Plaintiff places primary reliance on factors set forth by the Middle District of North Carolina in Cable-La, Inc. v. Williams Communications, Inc., 104 F. Supp. 2d 569, 577 (M.D.N.C. 1999), which are most commonly applied to evaluate inconvenience in the context of a motion to transfer under 28 U.S.C. § 1404(a). Defendants respond that these factors from Cable-La show the forum is not gravely inconvenient as plaintiff asserts and favor dismissal. Similar to the court in Bassett Seamless Guttering v. Gutterguard, LLC, the court is not convinced that analysis of these eleven factors is necessary or relevant here, especially as § 1404(a) transfer is not an option in this case. No. 1:05-cv-00184, 2006 WL 156874, at *6 n7 (M.D.N.C. Jan. 20, 2006) (unpublished).

In essence, plaintiff's arguments regarding inconvenience of the forum are as follows: Their choice of forum is North Carolina. Many of the witnesses reside in North Carolina and a Missouri court could not compel them to attend trial in Missouri. The work took place in North Carolina, and any review of the work would necessarily take place in North Carolina. Finally they argue this is a localized controversy that North Carolina has an interest in settling locally.

Defendants respond to each of plaintiff's arguments. Defendants point out that the forum selection clause eliminates the deference normally afforded to plaintiff's chosen forum. Cable-La, 104 F. Supp. 2d at 577. They argue that they have witnesses who reside in Missouri. They assert that plaintiff's ability use videotaped depositions cures any difficulty posed from a Missouri court's inability to compel any witness's attendance. Defendants contend the location of the litigation has no impact on the ease plaintiff or their experts would have in reviewing the

6

site of the work. Lastly they point out that Missouri has an interest in resolving a dispute regarding a contract executed within its borders by one of its corporations.

While litigation in Missouri may be burdensome for plaintiff, litigation in North Carolina would be difficult for defendants. This tension is of course inevitable in a diversity case, where "[n]o matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away." Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1258 (4th Cir. 1991). Plaintiff agreed in its subcontract with Munlake that "[v]enue for legal action shall be proper only in the courts of Jackson County, Missouri." Plaintiff had opportunity during the contract formation process to challenge this provision, and the inconvenience it now references was "clearly foreseeable at the time of contracting." The Bremen, 407 U.S. at 17-18. Although plaintiff references the financial and time expenditures of traveling to Missouri, "courts are in agreement that the expense of litigation is insufficient to invalidate a forum-selection clause, especially in a diversity case." Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG, 560 F. Supp. 2d 432, 439 (W.D.N.C. 2008). For instance, courts in this circuit have enforced forum-selection clauses requiring litigation in Colorado,[1] Texas,[2] New York,[3] Germany,[4] France,[5] Japan,[6] and the United Kingdom.[7] Based on the foregoing, and in recognition of federal policy favoring enforcement of forum-selection clauses,

---

[1] Bassett Seamless Guttering, Inc. v. GutterGuard, LLC, CIV. 1:05CV00184, 2006 WL 156874, at *7 (M.D.N.C. Jan. 20, 2006).

[2] Tuscan Downs, Inc. v. Culinary Sch. of Forth Worth, LLC, 5:08-CV-584-F(3), 2010 WL 3394768, at *6 (E.D.N.C. Aug. 26, 2010).

[3] Key Motorsports, Inc. v. Speedvision Network, LLC, 40 F. Supp. 2d 344, 349 (M.D.N.C. 1999).

[4] Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG, 560 F. Supp. 2d 432, 439 (W.D.N.C. 2008)

[5] Ada Liss Group (2003) Ltd. v. Sara Lee Corp., 1:06CV610, 2010 WL 4904666, at *7 (M.D.N.C. Nov. 24, 2010)

[6] Sucampo Pharmaceuticals, Inc., 471 F.3d at 551.

[7] Allen, 94 F.3d at 930.

the court finds that litigation in Missouri would not result in inconvenience so grave as to deprive plaintiff of its day in court. Allen, 94 F.3d at 928.

    b.  Fundamental unfairness of law

Next, the court considers the third basis of unreasonableness set forth in Allen: whether "the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy." Allen, 94 F.3d at 928. The court is not aware of any further guidance from the Fourth Circuit in the application of this factor, nor have the parties identified any. However, other federal district courts within North Carolina have had opportunity to examine this Allen factor, and the court finds the guidance of their holdings beneficial.

Merely because certain remedies are unavailable under the laws of different jurisdictions does not mean that plaintiffs are deprived of "*a* remedy" by being subject to those laws. Gita Sports Ltd., 560 F.Supp.2d at 440 (quotations omitted) (emphasis in original). Rather if the law to be applied "will apply to at least some of Plaintiff's claims" or "provides remedies that are similar to those Plaintiff seeks," then there is no fundamental unfairness. Bassett Seamless Guttering, 2006 WL 156974, at *6. The fact that remedies are "more fulsome under North Carolina law" does not cause the laws of other fora to be fundamentally unfair. Id.; see also Bonny v. Society of Lloyd's 3 F.3d 156, 162 (7th Cir. 1993) (holding that even though plaintiffs would be deprived of their specific rights under § 12(1) and § 12(2) of the Securities Act of 1933, the forum selection clause was still valid).

In this case, the parties have not identified a choice-of-law provision in the subcontract. Accordingly, if the parties were forced to litigate in Missouri state court, Missouri choice-of-law rules would apply. Plaintiff does not argue that Missouri choice-of-law rules could result in application of a law so fundamentally unfair as to deprive plaintiff of a remedy on its breach of

8

contract, *quantum meruit*, or payment bond claims. However, plaintiff does contend that a Missouri court, applying Missouri choice-of-law rules, could deprive plaintiff of any remedy for its claims for enforcement of liens.

Defendants correctly note that plaintiff's argument is based in conjecture, and that there is no choice of law provision stating that a Missouri court or arbitrator may not apply North Carolina law if applicable. Moreover, even if plaintiff's speculative eventuality occurs and Missouri law is applied, plaintiff would not be denied "*a* remedy" as many of their claims arising out of this transaction would still be valid. Gita Sports Ltd., 560 F.Supp.2d. at 440. The fact that the remedies afforded by a Missouri court are not the same does not mean Missouri law is fundamentally unfair. Id. Plaintiff would still have multiple remedies available to it under Missouri law, if indeed Missouri law applies. Therefore the court finds no fundamental unfairness.

    c.  Public Policy of North Carolina

Finally, the court addresses the fourth basis of unreasonableness set forth in Allen, which requires determining whether enforcement of the forum-selection clause would contravene a strong public policy of North Carolina. Allen, 94 F.3d at 928. Plaintiff contends that North Carolina has a strong public policy against enforcement of forum-selection clauses, memorialized in N.C. Gen. Stat. § 22B-2, which provides:

> A provision in any contract, subcontract, or purchase order for the improvement of real property in this State, or the providing of materials therefor, is void and against public policy if it makes the contract, subcontract, or purchase order subject to the laws of another state, or provides that the exclusive forum for any litigation, arbitration, or other dispute resolution process is located in another state.

9

N.C. Gen. Stat. § 22B-2.[8]

However, the Fourth Circuit previously has rejected a similar argument directed toward a South Carolina statute that in effect "makes all forum selection clauses permissive." Albemarle, 628 F.3d at 652. The Fourth Circuit's rationale in Albemarle applies with equal force here. To the extent the North Carolina statute would purport to impose its procedural rules on a federal court, it would be preempted by federal law. Id. Further, the policy reflected in N.C. Gen. Stat. § 22B-2, opposition to enforcement of forum-selection clauses, was rejected by the Supreme Court in The Bremen, in which opinion the Court instead afforded such clauses a presumption of enforceability. The Bremen, 407 U.S. at 12. Thus, as the Fourth Circuit found in Albemarle with respect to South Carolina's similar statute, "it can hardly be a strong public policy [for North Carolina] to countermand the very policy that the Supreme Court adopted in The Bremen. The Bremen would have little effect if states could effectively override the decision by expressing disagreement with the decision's rationale." Albemarle, 628 F.3d at 652. Based on the foregoing, having considered the bases of unreasonableness set forth in Allen, 94 F.3d at 928, the court finds that the forum-selection clause in the subcontract is enforceable.

3. The forum selection clause embraces all of plaintiff's claims

The court must next determine whether all of plaintiff's claims are embraced by the forum-selection clause. See Robinson v. Ladd Furniture, Inc., 1993 WL 213309, 995 F.2d 1064, *4 (4th Cir. 1993) (unpublished) (construing a contractual choice of law provision and stating, "It is not enough simply to decide that this clause is enforceable in the abstract; we must also determine whether it is enforceable against these particular claims."). In determining the scope of the forum-selection clause, the court looks "to the language of the parties' contracts to

---

[8] Section 22B-3 of the North Carolina General Statutes is not applicable. It applies only when the contract was "entered into in North Carolina," and the subcontract here "was executed and submitted in the State of Missouri, and all bids [were] considered and accepted in Missouri." Defs.' Mem. Ex. 3, § XIV, E.

10

determine which causes of action are governed by the forum selection clauses." Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 222 (5th Cir. 1998). The clause at issue here is broadly worded: "Venue for legal action shall be proper only in the courts of Jackson County, Missouri." Defs.' Mem. Ex. 3 § XIV, G. This language applies to plaintiff's first claim of relief, breach of contract against Munlake, where the clause is found in the subcontract between plaintiff and Munlake.

In addition, the language used embraces plaintiff's second claim, pleaded in the alternative, for *quantum meruit*. See Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993) ("We therefore reject . . . the contention that only allegations of contractual violations fall within the scope of the clauses."). Other courts similarly have found that an agreement's forum-selection clause applies to a claim for *quantum meruit* (or unjust enrichment). See Berrett v. Life Ins. Co. of the Sw., 623 F. Supp. 946, 949 (D. Utah 1985); LTVN Holdings LLC v. Odeh, CIV. A. CCB-09-0789, 2009 WL 3736526, *5 (D. Md. Nov. 5, 2009); Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc., CV 09-3627 PSG AJWX, 2010 WL 5572079 (C.D. Cal. Mar. 19, 2010).

The clause also applies to plaintiff's third claim (enforcement of lien on funds against Munlake and Independence Place) and its fourth claim (enforcement of lien on real property). While the Fourth Circuit does not appear to have addressed whether forum-selection clauses can apply to related non-contractual claims, the court is not without guidance. Other courts have addressed this same question and held that they can. See Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993) ("contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties"); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988)

11

(holding that a forum selection clause applies to non-contractual claims when resolution of those claims relates to interpretation of the contract); see also Kochert v. Adagen Medical Intern., Inc., 491 F.3d 674, 679 (7th Cir. 2004) (holding that a forum selection clause not limited to claims for breach of contract applied to other claims stemming from plaintiff's contractual relationship with defendant).

Moreover, a forum selection clause may apply to non-signatories where the alleged conduct of those non-signatories is closely related to the contractual relationship. Manetti-Farrow, Inc., 858 F.2d at 514 n.5; see Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285 (11th Cir. 1998) (noting that when a non-signatory defendant's interests are "directly related to, if not predicated upon, the [signatory defendant's] conduct" the non-signatory defendant is bound); Belfiore v. Summit Fed. Credit Union, 452 F. Supp. 2d 629, 633 (D. Md. 2006) ("With regard to non-parties being covered by choice of forum clauses, it is generally held that all participants, parties, and non-parties are covered by choice of forum clauses so long as their alleged conduct is 'closely related' to the contract in question.").

In this case, plaintiff placed the liens at issue in its third and fourth claims because of the parties' dispute over the subcontract. These lien claims involve the same operative facts as the parallel claim for breach of the subcontract, resolution of these claims relates to interpretation of the subcontract, and these claims stem from plaintiff's contractual relationship with defendant Munlake. In addition, although defendant Independence Place is not a party to the forum selection agreement, its interests in this dispute as owner of the property are directly related to, if not predicated upon, defendant Munlake's conduct. Any conduct with regards to payment by defendant Independence Place is closely related to the contractual relationship because defendant Independence Place could be subject to direct claims by plaintiff under the liens in claims three

12

and four should defendant Independence Place disburse funds to defendant Munlake covered by the Lien on Funds, and should defendant Munlake be found liable for breach of contract. Therefore, the forum selection clause applies to plaintiff's third and fourth claims.

Finally, Berkley, though not a party to the subcontract, may nonetheless invoke the forum-selection clause. "Although a surety is not a party to a subcontract agreement, its liability under a payment bond is determined by the agreements between its principal and the subcontractor. The surety therefore should have all the benefits and suffer all the disadvantages that would accrue to the general contractor under those agreements." Arrow Plumbing and Heating, Inc. v. North American Mechan. Servs. Corp., 810 F. Supp. 369, 372 (D.R.I. 1993) (citation omitted); see also Jimmie Lyles Carpets, Inc. v. Munlake Contractors, Inc., 5:11-CV-85 DCB JMR, 2012 WL 2222857 *8 (S.D. Miss. June 14, 2012) (interpreting a forum-selection clause identical in language to the one at issue in this case and holding that the surety, Berkley, who issued a payment bond with Munlake as principal, may invoke the forum-selection clause).[9]

Based on the foregoing, venue as to plaintiff's claims is proper only in the courts of Jackson County, Missouri. Where this court cannot transfer claims to a state court, it will dismiss without prejudice for filing in the correct forum plaintiff's claims for relief.

---

[9] In the alternative, even if the forum selection clause did not reach plaintiff's third and fourth lien claims against defendant Independence Place, or plaintiff's fifth claim against Berkley, plaintiff's claims against these defendants nevertheless are subject to dismissal because they are integrally related to the claims against defendant Munlake for the reasons stated above. See Bonny, 3 F.3d at 162 (citations omitted) (holding that a "court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related").

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss is GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE to refiling in the courts of Jackson County, Missouri.

SO ORDERED, this the 24th day of October, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge